**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PERKINS MANUFACTURING COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**HAUL-ALL EQUIPMENT LTD.,**<br><br>Defendant. | **No. 19 cv 03769**<br><br>**Judge Mary M. Rowland** |

**MEMORANDUM OPINION & ORDER**

Plaintiff Perkins Manufacturing Company ("Perkins") brought suit against Defendant Haul-All Equipment LTD ("Haul-All") for breach of contract under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Haul-All responded to Perkins' Complaint with Answers, Affirmative Defenses, and Counterclaims. Before the Court is Perkins' motion to dismiss Counts I, II, III, and V of Haul-All's counterclaims. (Dkt. 20). In the course of briefing, Haul-All conceded that Counts I and V must be dismissed. (Dkt. 27, 2). Accordingly, the Court only addresses arguments regarding Counts II and III. For the reasons stated below, Perkins' motion to dismiss [20] is granted as to Counts I, II, and V, and denied as to Count III.

**BACKGROUND**

The following facts are alleged in Haul-All's Answer, Affirmative Defenses, and Counterclaims, and are presumed true for the purpose of resolving the pending motion. (Dkt. 13). Haul-All is a Canadian corporation in the business of selling waste-

management vehicles and equipment throughout Canada. (Dkt. 13, Counterclaims, ¶¶ 5-6). Perkins is an Illinois corporation that manufactures cart and container lifters. (*Id.* at ¶¶ 7-8). In 2014, Haul-All entered into negotiations with Perkins for the purchase of automated "sideloaders," a type of mechanical arm on waste-management trucks. (*Id.* at ¶ 9).

In August 2014, Haul-All entered into an agreement with the City of Toronto for the purchase of fourteen waste-management trucks with affixed sideloaders. (Dkt. 13, Counterclaims, ¶ 11). Haul-All was awarded this contract through a bidding process and was required to meet specific bid requirements in order to win the contract. (*Id.*). In September of 2015, Haul-All entered into a similar arrangement with the Town of Taber. (*Id.* at 12). Haul-All alleges that, from the beginning of negotiations, Perkins was aware that the sideloaders were intended for use on Haul-All trucks pursuant to the Toronto Agreement and Taber Agreement. (*Id.* at ¶¶ 13-14). Haul-All claims that these Agreements were incorporated into Haul-All's Request for Quotation. (*Id.* at ¶ 28). Toronto and Taber had certain requirements, including that the sideloaders come from a company with a long history of making such products, as well as product and hardware requirements such as lifting capacity and size of the mechanical arm. (*Id.* at ¶¶ 15-17, 21, 22). Taber and Toronto also required that the manufacturer of the sideloaders provide a warranty. (*Id.* at ¶ 28). Haul-All requested a warranty from Perkins which Perkins agreed to provide. (*Id.* at ¶¶ 29-31).

Haul-All alleges that in October 2014, Haul-All executives Kelly Philipp and Paul Neufeldt had a telephone conversation with Hubert Gutierrez, Perkins'

2

International Sales Manager. (Dkt. 13, Counterclaims, ¶ 16). During that conversation, Philip informed Gutierrez that the sideloaders needed to comply with certain requirements, including that the sideloaders had undergone Finite Element Analysis ("FEA") testing, that the manufacturing company had many years of experience making these sideloaders, and that certain factory jigs would be used to ensure consistency. (*Id*). Gutierrez responded that Perkins used FEA on its products, Perkins had been manufacturing sideloaders for eleven years, and Perkins used jigs. (*Id*. at ¶ 17). According to Haul-All, Perkins followed up these oral representations with written representations contained in various emails. (*Id*. at ¶ 18). Haul-All asserts that it entered into Agreements with Perkins for the purchase of the sideloaders based on these representations. (*Id*. at ¶ 19).

Haul-All required the first batch of sideloaders to be delivered by June 22, 2015. (Dkt. 13, Counterclaims, ¶ 24). Perkins delivered the first batch of sideloaders on July 30, 2015. (*Id*. at ¶ 25). The second batch of sideloaders, for sixteen units, was to be delivered in the first week of November 2015. (*Id*. at ¶ 26). The first two of the sixteen units were delivered in December 2015. (*Id*. at ¶ 27). The final unit from the second batch was delivered in February 2017. (*Id*.) Additionally, in August 2015, Gutierrez confirmed that (1) the required jigs had not been used on the first batch of sideloaders that had already been delivered, but (2) the jigs would be used for the remaining batches. (*Id*. at ¶ 33).

In December 2015, Philipp and Neufeldt had a telephone call with Perkins Plant Manager, Ramiro Arrez. (Dkt. 13, Counterclaims ¶ 34). Arrez revealed that

3

Perkins had not been manufacturing the sideloaders for eleven years, Perkins had not performed the required FEA testing, and Perkins was not using jigs in manufacturing the sideloaders. (*Id.* at ¶ 34).

Starting in August 2015, Haul-All experienced problems with the sideloaders, including broken grip pins, frame breaks, weld failures, and receiving incorrect parts from Perkins. (Dkt. 13, Counterclaims ¶ 36). After Haul-All delivered the waste-management vehicles to Toronto and Taber, both Toronto and Taber reported that the sideloaders repeatedly failed. (*Id.* at ¶¶ 39, 40). Haul-All alleges that these failures stemmed from several factors, including failure by Perkins to follow the engineering specifications such as incorrect drilling angles, failures in the steel used, failure to use certified welders, and the fact that final products were different from the engineering models provided by Perkins. (*Id.* at ¶ 42). Haul-All had to repeatedly replace and repair the sideloaders. (*Id.* at ¶ 43). Haul-All further alleges that Perkins repeatedly breached both the Toronto and Taber warranties. (*Id.* at ¶ 92).

After a meeting between Haul-All and Perkins, Perkins agreed to re-work all Toronto sideloaders. (Dkt. 13, Counterclaims ¶ 48). Haul-All subsequently began replacing all Toronto units. (*Id.* at ¶ 49). On November 17, 2016, Toronto wrote to Haul-All expecting to be compensated for the faulty sideloaders. (*Id.* at ¶ 50) Because of continued problems and failures of the Perkins sideloaders, on May 6, 2017, Toronto requested that Haul-All replace all Perkins sideloaders with another, non-Perkins product. (*Id.* at ¶ 51). Taber issued a similar request to Haul-All, requesting new non-Perkins sideloaders at Haul-All's expense. (*Id.* at ¶¶ 54, 55). In September 2016,

Taber informed Haul-All that, as a result of the failure of the Perkins sideloaders, Taber would no longer accept bids from Haul-All. (*Id.* at ¶ 56). In June or July 2017, Toronto informed Haul-All that it would no longer be awarding the contract to Haul-All. (*Id.* at ¶ 57).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the Plaintiff's complaint and must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)). However, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to

5

survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate...." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Perkins argues that Count II should be dismissed because the CISG preempts state law, and that Count III should be dismissed for failure to state a claim. The Court shall address each argument in turn.

**1. Preemption by the CISG**

Perkins argues that Haul-All's state law fraud and misrepresentation claim brought in Count II is preempted by the CISG. The CISG is an international treaty, ratified by the United States in 1986, that "sets out substantive provisions of law to govern the formulations of international sales contracts and the rights and obligations of the buyer and the seller." *Caterpillar, Inc. v. Usinor Industeel*, 393 F.Supp.2d 659, 673 (N.D. Ill. 2005) (citing *Usinor Industeel v. Leeco Steel Products, Inc.*, 209 F.Supp.2d 880, 884 (N.D. Ill. 2002)). The CISG applies to international sales contracts between parties located in signatory countries, and who have not opted out of CISG coverage at the time of contracting. *Id.*; *see Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2d. Cir. 1995) (CISG is a self-executing treaty and applies where the agreement is silent as to choice of governing law). There is no dispute that both the United States and Canada are signatories to the CISG, and the agreements at issue contain no choice of governing law.

As other courts in this Circuit have noted, "federal law interpreting and applying and the CISG is scant." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, No. 12 C 8154, 2013 WL 816103, at *4 (N.D. Ill. Mar. 5, 2013) (citing *Ajax Tool Works, Inv. v. Can-Eng Mfg. Ltd.*, No. 01 C 5938, 2003 WL 223187, at *2 (N.D. Ill. Jan. 30, 2003)), *appeal dismissed* (July 19, 2013), *rev'd in part on other grounds*, 748 F.3d 780 (7th Cir. 2014). Because of this, the Court is authorized to interpret the CISG under general preemption principals. *VLM Food Trading*, 2013 WL 816103, at *4 (citing *Usinor Industeel*, 209 F.Supp.2d at 884).

As a treaty to which the United States is a signatory, the CISG is federal law; thus, under the Supremacy Clause, it preempts inconsistent provisions of Illinois law. *Caterpillar, Inc.*, 393 F.Supp.2d at 673 (citing *Usinor Industeel*, 209 F.Supp.2d at 884-85). "The issue is one of scope." *Id*. State law causes of action that fall within the scope of federal law—here, the CISG—are preempted. *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 56, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (discussing preemption principles)). Federal courts throughout the country agree that the CISG preempts state contract law. *See, e.g.*, *Electrocraft Arkansas, Inc. v. Super Electric Motors, Ltd.*, No. 4:09cv00318, 2009 WL 5181854, at *5 (E.D. Ark. Dec. 23, 2009) ("there is agreement that concurring state contractual claims are preempted by the CISG"); *Asante Tech., Inc. v. PMC-Sierra, Inc.*, 164 F.Supp.2d 1142, 1151 (N.D. Cal. 2001) ("the expressly stated goal of developing uniform international contract law to promote international trade indicates the intent of the parties to the treaty to have the treaty preempt state law causes of action"); *see also* William S. Dodge, *Teaching*

7

*CISG in Contracts*, 50 J. Legal Educ. 72, 72 (March 2000) ("As a treaty the CISG is federal law, which preempts state common law and the UCC.").

Recognizing the limited scope of CISG's preemption, *Asante Technologies*, 164 F.Supp.2d at 1151-52, federal courts have determined that tort claims are generally not preempted by the CISG. *Weihai Textile Group Import & Export Co., Ltd. v. Level 8 Apparel, LLC*, No. 11 CV 4405(ALC)(FM), 2014 WL 1494327, at *16 (S.D.N.Y. Mar. 28, 2014) ("tort claims are generally not preempted by the CISG") (citing *Semi-Materials Co., Ltd. v. MEMC Electronic Materials, Inc.*, No. 4:06 CV 1425(FRB), 2011 WL 65919, at *3 n. 2 (E.D. Mo. Jan. 10, 2011)); *Viva Vino Import Corp. v. Farnese Vini S.r.l.*, No. CIV.A. 99-6384, 2000 WL 1224903, at *1, (E.D. Pa. Aug. 29, 2000) ("The CISG does not apply to tort claims."). However, "a tort that is in essence a contract claim and does not involve interests existing independently of contractual obligations … will fall within the scope of the CISG regardless of the label given to the claim." *Weihai Textile Group,* 2014 WL 1494327, at *16 (citing *Electrocraft Arkansas*, 2009 WL 5181854, at *5); *see also Geneva Pharmaceuticals Tech. Corp. v. Barr Labs, Inc.*, 201 F.Supp.2d 236, 286 n. 30 (S.D.N.Y. 2002), *aff'd in part, rev'd on other grounds*, 386 F.3d 485 (2d Cir. 2004) ("Just because a party labels a cause of action a 'tort' does not mean that it is automatically not preempted by the CISG. A tort that is actually a contract claim, or that bridges the gap between contract and tort law may very well be pre-empted."). The question for this Court, then, is whether Haul-All's claim for "fraud/misrepresentation" is "actually a breach-of-contract claim in masquerade." *Electrocraft Arkansas*, 2009 WL 5181854, at *5.

"The difference between an action in contract and one in tort is not always exact." *Electrocraft Arkansas*, 2009 WL 5181854, at *5. Whether an action is based in contract or tort depends on the right sued upon, the form of the pleadings, and the relief demanded. *Id.* Ultimately, "[i]f based on breach of promise it is contractual; if based on breach of a non-contractual duty it is tortious." *Id.* Damages prayed for are an additional factor to consider—the purpose of damages under the law of contract is to see that promises are performed, where damages under the law of torts provides redress for injuries. *Id.*

Here, the gravamen of Haul-All's claim for "fraud/misrepresentation" is that Perkins' misrepresentations induced Haul-All to enter into a contractual relationship with Perkins, and that Perkins breached its promise by delivering non-conforming products (sideloaders without jigs, sideloaders that had not undergone FEA testing and could not meet specific load-bearing requirements, etc.). The nature of the fraud and misrepresentation claim stems from representations made in the parties' agreement. It thus relates to a breach of Perkins' promises. Additionally, Haul-All's request for damages sounds in reliance, and Haul-All seeks to recover direct and consequential damages from Perkins. The pleading and relief requested indicated that Count II is not based on an independent duty but is rather supported by the same factual allegations as the breach of contract claims. The claim is not otherwise distinct from the contractual issues. Count II is thus preempted by the CISG and is accordingly dismissed.

In contrast, Haul-All's claim for tortious interference with a business relationship is not preempted by the CISG.[1] *See Reecon North America, LLC v. Du-Hope International Group*, No. 2:18-CV-00234-JFC, 2019 WL 2542536, at *13, (W.D. Pa. June 20, 2019) ("The CISG does not apply to tort claims, including claims of tortious interference with business relations."); *Viva Vino Import Corp.*, 2000 WL 1224903, at *1 (The CISG does not apply to tort claims. Consequently, it is inapplicable to plaintiff's claim of tortious interference with business relations."); *Electrocraft Arkansas*, 2009 WL 5181854, at *5 ("…being a tort claim alleging intentional harm to economic interests, the Court concludes that Electrocraft's tortious interference with business expectancy claim is not preempted by the CISG, which only concerns the sale of goods between merchants in different countries."). Accordingly, the next question for the Court is whether Haul-All has sufficiently pled its tortious interference claim.

**2. Tortious Interference with a Business Relationship**

To state a claim for tortious interference with a business relationship under Illinois law, Haul-All must plead: (1) a reasonable expectation of future business with a third party, (2) defendant's knowledge of the prospective business, (3) defendant's purposeful interference to prevent the expectancy from being fulfilled, and (4) resulting damage to the plaintiff. *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F.Supp.3d 775, 784 (N.D. Ill. 2013) (citing *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.2d

---

[1] In its motion to dismiss, Perkins argued that Count III (tortious interference with a business relationship) is preempted by the CISG. (Dkt. 20, 4). Perkins appears to have dropped that argument in its reply brief, arguing only that Count III should be dismissed for failure to state a claim. (Dkt. 30, 1).

414, 417 (7th Cir. 2009)).[2] Haul-All has thoroughly pled each element. It has alleged a reasonable expectation that it would engage in an ongoing business relationship with Toronto and Taber based on the awarded bids. (Dkt 13 ¶ 81, 83). Haul-All has also alleged that Perkins was aware of the prospective business relationship with Toronto and Taber. Indeed, Perkins was aware that the sideloaders were to be used by Toronto and Taber, Haul-All expected to work with Toronto and Taber for many years, and that Toronto and Taber had specific requirements for the sideloaders. (*Id.* at ¶¶ 84-87). Finally, Haul-All has alleged purposeful interference and damages, including the business relationships with Taber and Toronto ending. (*Id.* ¶¶ 87-99). Haul-All has properly pled a claim for tortious interference with a business relationship.

## CONCLUSION

For the foregoing reasons, Perkins' motion to dismiss [20] is granted as to Counts I, II, and V, and denied as to Count III.

E N T E R:

Dated: May 7, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[2] Notably, the heightened pleadings standard under Federal Rule of Civil Procedure 9(b) that governs fraud claims does not apply to claims of tortious interference with a business relationship. *V & V Supremo Foods, Inc. v. Sloan Acquisition Corp.*, No. 01 C 9913, 2002 WL 1759787, at *7 (N.D. Ill. July 29, 2002).